

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 3 1 2016
CLERK, U.S. DISTRICT COURT
By_____
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TIMOTHY LEE KIRKPATRICK,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-CV-690-A** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| **DEFENDANT.** | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Timothy Lee Kirkpatrick ("Kirkpatrick") filed this action pursuant to Sections

405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision

of the Commissioner of Social Security denying his claims for a period of disability and

disability insurance benefits ("DIB") under Title II and supplemental security income (SSI)

under Title XVI of the Social Security Act ("SSA"). In April 2012, Kirkpatrick protectively

applied for DIB and SSI, alleging his disability began on January 1, 2007. (Transcript ("Tr.")

25, 132-44.) After his applications were denied initially and on reconsideration, Kirkpatrick

1

requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 25, 81-100.) The ALJ held a hearing on October 9, 2013 and issued an unfavorable decision on February 19, 2014. (Tr. 25-32, 39-72.) Thereafter, on July 17, 2015, the Appeals Council denied Kirkpatrick's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Kirkpatrick subsequently filed this civil action seeking review of the ALJ's decision.

## I.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq*., of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or

combination of impairments that is severe.   20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).   And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).   At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*   But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).   An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long

3

as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla, but less than a preponderance.   *Id.*   A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision.   *Id.*   This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.   *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II.   ISSUES

In his brief, Kirkpatrick presents the following issues:

A. Whether the ALJ failed to properly weigh the medical opinion evidence of Kirkpatrick's treating physician, Sanjoy Sundaresan, M.D. ("Dr. Sundaresan") and failed to properly determine his residual functional capacity ("RFC"); and

B. Whether the ALJ failed to properly weigh Kirkpatrick's credibility.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 10-18.)

## III.   ALJ DECISION

In his February 19, 2014 decision, the ALJ found that Kirkpatrick met the insured status requirements of the SSA for purposes of his DIB claim under Title II through December 31, 2010 and that Kirkpatrick had not engaged in substantial gainful activity since January 1, 2007, the onset date of Kirkpatrick's disability.   (Tr. 30; *see* Tr. 25-26.)   In her decision, the ALJ noted the difference between Kirkpatrick's claims under Title II and Title XVI by stating:

4

The claimant's earnings record shows that he last met the special earnings requirements of Title II of the Act on December 31, 2010.  Therefore, to be found entitled to a period of disability under Title II, the claimant's disability must be shown to have begun as of or prior to that date.  Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability for Title II purposes.  Eligibility to Title XVI benefits is established if disability is shown to have begun at any time prior to the date of the decision.

(Tr. 25 (internal citations omitted).)  The ALJ, in reviewing the medical evidence, noted that there was very little medical evidence in the record dated prior to December 31, 2010, except for the following: (1) evidence that Kirkpatrick sought treatment for an injury to his finger; (2) evidence that Kirkpatrick reported some neck pain in 2010, with a doctor noting that he had degenerative joint disease at the C5-6 level but an MRI scan did not reveal any spinal cord compression; (3) evidence that Kirkpatrick was treated for a right testicle mass and had high blood pressure; (4) treatment notes showing Kirkpatrick reported some right knee pain, citing the presence of a rod in the right femur from a prior motor vehicle accident, and that he had surgery on the right knee in June 2010 after being diagnosed with a medial meniscal tear and meniscal cyst; and (5) evidence that Kirkpatrick was hit by a steel door in November 2010, which fractured a "fifth metacarpal neck and right harnate body fracture" but that he reported "feeling great" a week later.  (Tr. 26.)  As a result, the ALJ stated:

There is little other medical evidence dated prior to December 31, 2010. The foregoing evidence simply does not support a finding that, prior to December 31, 2010, the claimant had a medically determinable impairment or combination of impairments that is 'severe'.  *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). The remainder of this decision will focus on the application for Supplemental Security Income benefits filed on April 24, 2012.

(Tr. 26-27.)

5

The ALJ further found that Kirkpatrick did not have a severe impairment or combination

of impairments through December 31, 2010 but that, as of June 15, 2012, Kirkpatrick had

"severe degenerative disc disease of the cervical spine, degenerative joint disease of the knee and

shoulder (both status post surgery)". (Tr. 30; *see* Tr. 26-27.) Next, the ALJ held that neither

Kirkpatrick's impairment, nor combination of impairments, met or equaled the severity of any

impairments in the Listing. (Tr. 30; *see* Tr. 27.) As to Kirkpatrick's RFC, the ALJ stated:

> The claimant has retained the functional capacity modified by the following: :
> [sic] the need to alternate sitting and standing while in the performance of job
> duties; lifting and carrying of up to 20 pounds occasionally and 5 pounds
> frequently; standing/walking for two continuous hours out of an eight-hour
> workday, and a total of three hours, total, standing during the work day, and four
> hours, total, of walking during the workday; the ability to sit for six hours out of
> eight; pushing and/or pulling unlimited except for the lifting/carrying
> requirements; no more than occasional climbing, keeling, crouching, or crawling,
> and the ability to frequently balance and stoop; overhead reaching limited to
> occasional; no more than occasional bilateral handling.

(Tr. 31; *see* Tr. 27-29.)

Next, the ALJ found that Kirkpatrick was not capable of performing his past relevant

work but that there were a significant number of jobs in the national economy that he could

perform. (Tr. 31; *see* Tr. 29-30.) Consequently, the ALJ concluded that Kirkpatrick was not

disabled. (Tr. 31.)

## IV.    DISCUSSION

### A.    Treating Physician Opinion and RFC Determination

In his brief, Kirkpatrick raises several issues regarding the ALJ's failure to properly

analyze the RFC opinions of his treating neurosurgeon, Dr. Sundaresan. (Pl.'s Br. at 10-15.)

Specifically, Kirkpatrick claims that the ALJ: (1) erred in his analysis of Dr. Sundaresan's

opinions by first stating that she was giving Dr. Sundaresan's opinions in the July 31, 2012 RFC determination "great, if not controlling, probative weight, and then stating that such opinions could not be given controlling weight (Pl.'s Br. at 11; *see* Tr. 854-60); (2) erred in formulating Kirkpatrick's RFC without including "a narrative of *any* specific medical or non-medical facts that support" such RFC determination as required by Social Security Ruling ("SSR") 96-8p (Pl.'s Br. at 16); (3) erred in failing to consider the factors set forth in 20 C.F.R. 404.1527(c) and 416.927(c) in rejecting Dr. Sundaresan's opinions in the RFC determinations (Pl.'s Br. at 14-15); and (4) erred in "failing to indicate why no consideration was given to the retrospective nature of Dr. Sundaresan's opinions that they applied prior to the date last insured" (Pl.'s Br. at 13; *see* Tr. 860, 1114);.

The ALJ, as set forth above, then found that, as of June 15, 2012, Kirkpatrick had the following severe impairments: (1) degenerative disc disease of the cervical spine and (2) degenerative joint disease of the knee and shoulder (both status post surgery). (Tr. 30.) Next, the ALJ determined that Kirkpatrick had the RFC to perform, in essence, light work[1] with the following modifications: (1) need to alternate sitting and standing; (2) limited to lifting and

---

[1] Pursuant to the regulations, light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

carrying of up to twenty pounds occasionally and five pounds frequently; (3) limited to standing and walking for two continuous hours out of an eight-hour workday and a standing for a total of three hours and walking for a total of four hours during the work day; (4) could sit for six hours out of an eight-hour workday; (5) had the unlimited ability to push and/or pull; (6) could only occasionally climb, kneel, crouch, or crawl and frequently balance and stoop; and (7) was limited to occasional reaching overhead and bilateral handling.  (Tr. 29.)

In making such determinations, the ALJ relied, *inter alia*, on the following evidence: (1) medical notes indicating that in June 2011 Kirkpatrick underwent arthroscopic surgery on the right shoulder, followed by rotator cuff debridement and repair in December 2011, resulting in some lingering limitation of motion of the shoulder (Tr. 28; *see* Tr. 255, 667); (2) medical notes indicating that Kirkpatrick, in May 2012, underwent elective surgery on the left knee after being diagnosed with a medial meniscus tear and that he recovered well from this surgery (Tr. 28; *see* Tr. 751-52); (3) medical evidence indicating Kirkpatrick suffered from neck pain, had undergone facet rhizotomy injections, had chronic bilateral C6 radiculitis, and also had been diagnosed with cervical spondylosis without myelopathy (Tr. 28; *see* Tr. 976, 999, 1036-39); (4) medical notes indicating that in April 2013 Kirkpatrick sought treatment for two brief syncope episodes in which a CT scan of the head was negative and, while Kirkpatrick reported a history of back and neck pain, he reported a pain level of one out of ten (Tr. 1082, 1088-89; and (5) a Physical Residual Functional Capacity Assessment ("PRFCA") dated October 26, 2012 in which State Agency Medical Consultant Amita Hegde, M.D. ("SAMC Hegde") opined that Kirkpatrick could, in essence, perform light work but was limited to only: (a) occasional climbing of ramps,

8

stairs, ladders, ropes or scaffolds; (b) occasional balancing, stooping, kneeling, crouching, crawling; and (c) occasional overhead reaching with the right arm (Tr. 29; *see* Tr. 949-56).

As to Dr. Sundaresan's opinions, the ALJ stated:

> Exhibit 17F contains an [sic] residual functional capacity by Dr. Sanjoy[2] dated July 31, 2012, in which he opined that the claimant could sit for four to five hours out of an eight hour workday; stand/walk for one to two hours out of an eight-hour workday; the need to arise from a sitting position every hour and move about, with the ability to sit again after 5-10 minutes; the ability to frequently lift and/or carry "0" pounds, but up to 20 pounds occasionally; and with the claimant's pain being severe enough to 'frequently' interfere with attention and concentration. Dr. Sanjoy also opined that the claimant was incapable of even 'low stress', saying that it could exacerbate his pain, and that the claimant may be expected to be absent from work two to three times a month.
>
> I am giving Dr. Sanjoy's opinion great, if not controlling, probative weight. I cannot accord it controlling weight since his opinion concerning the claimant's functional capacity is at odds with his own progress notes. For instance, in May 2013 Dr. Sanjoy noted that the claimant was neurologically intact, and the claimant even noted that when he takes his pain medications he is able to walk faster (Exhibit 24F, p. 1). It was also noted that the injections the claimant was undergoing would relieve 95 percent of the pain, for ten weeks (Exhibit 24F, p. 3).
>
> My functional capacity takes into account the claimant's neck and arm pain. I must note that the presence of pain is not, in and of itself, disabling. Rather, the pain must be of such severity as to markedly preclude sustained work activity, in large part due to an interference with the ability to concentrate. While the claimant was certainly seeing Doctor Sanjoy for chronic neck pain, even prior to the injections the claimant was noted as 'ambulating independently and moving all extremities well without obvious deficits' (Exhibit 25F, p. 1). I will observe that Dr. Sanjoy noted at one point that the claimant's condition was unlikely to be cured by surgery (Exhibit 22F, p. 18). The progress notes also continually refer to the claimant being 'employed', although I have accepted the claimant's testimony that he has not been engaged in work activity (Exhibit 22F, p. 22).

(Tr. 28 (footnote added).)

---

[2] The ALJ referred to Dr. Sundaresan by his first name, Dr. Sanjoy, throughout her decision. (Tr. 28.)

RFC is what an individual can still do despite his limitations.[3]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do, but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at *3-5.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

*Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Furthermore, SSR 96-8p, which relates to assessing a claimant's RFC, states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . .
>
> . . . .
>
> . . . The RFC assessment must also consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453; *see* 20 C.F.R § 416.927. Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R.

12

§§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57; *see also* 20 C.F.R. § 416.927(c). An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

### 1. Weight Given to Dr. Sundaresan's RFC Opinions & SSR 96-8p

The ALJ's decision in this case shows that she did specifically consider Dr. Sundaresan's opinions in his July 31, 2012 RFC assessment as the ALJ described such opinion and then stated that she was giving such opinions "great, if not controlling, probative weight." (Tr. 28.) While, as noted by Kirkpatrick, the ALJ's next statement that she "cannot accord it controlling weight

since his opinion concerning [Kirkpatrick's] functional capacity is at odds with his own progress notes," is inconsistent, it appears that such statement was a typographical error. From the context of the ALJ's opinion, it appears that the ALJ meant to say she was giving Dr. Sundaresan's RFC opinions "great, **but** not controlling, probative weight." Such an interpretation is supported by the ALJ's RFC determination, wherein she incorporated many of Dr. Sundaresan's RFC findings. Specifically, the ALJ included Dr. Sundaresan's findings in her RFC determination that: (1) Kirkpatrick could lift up to twenty pounds occasionally; (2) Kirkpatrick needed to alternate between sitting and standing; and (3) Kirkpatrick could stand and walk continuously for up to two hours out of an eight-hour workday. (Compare Tr. 28, 857-58 with Tr. 29, 31.) The ALJ explained that he was not giving all of Dr. Sundaresan's findings great weight because some of such findings were at odds with Dr. Sundaresan's own progress notes. (Tr. 28.) The ALJ specifically noted that in May 2013, Dr. Sundaresan had noted that (1) Kirkpatrick was neurologically intact, (2) Kirkpatrick stated he was able to walk faster when he took his pain medications, and (3) that the injections would relieve 95% of his pain for ten weeks. (Tr. 28; *see* Tr. 1038.) In addition, the ALJ noted that, while Kirkpatrick was seeing Dr. Sundaresan for chronic neck pain, Kirkpatrick was noted in July 2013 as ambulating independently and moving all extremities well without obvious deficits. (Tr. 28-29; *see* Tr. 1066.)

Moreover, contrary to Kirkpatrick's claims, the ALJ's RFC assessment did comply with SSR 96-8p. The ALJ explained that she was accepting many of Dr. Sundaresan's conclusions in the RFC assessment but that she was not accepting those that were inconsistent with Dr.

14

Sundaresan's treatment notes as well as other objective medical evidence in the record. (Tr. 28-29.) The ALJ noted other evidence in the record, including SAMC Hegde's October 26, 2012 PRFCA opinion, that indicated Kirkpatrick was not as impaired in all areas to the extent opined by Dr. Sundaresan in his RFC opinions. (Tr. 29.)

Thus, contrary to Kirkpatrick's claims, the ALJ properly evaluated Dr. Sundaresan's RFC opinions and, in fact, gave those opinions great weight that were supported by the other evidence in the record. The ALJ explained why she did not give all of Dr. Sundaresan's RFC opinions great weight. Moreover, there is substantial evidence in the record that supports the ALJ's RFC and disability determination. (Tr. 14.) The ALJ properly discussed the evidence of record in making her disability determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised her responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into her residual functional capacity assessment that were most supported by the record. *See,* e.g., *Muse*, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

### 2.  Factors Under 20 C.F.R. §§ 404.1527(c) and 416.927(c)

As to Kirkpatrick's arguments regarding the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the Court is not convinced that the ALJ was required to engage in such an analysis as the ALJ did not reject the majority of Dr. Sundaresan's RFC opinions. However, even assuming without deciding that such an analysis was required, the Court finds that the ALJ properly performed such analysis. To begin with, as to factors one and two under which the ALJ

evaluates the examining and treatment relationship between Kirkpatrick and Dr. Sundaresan, the ALJ, at the very least, implicitly recognized that Dr. Sundaresan had been treating Kirkpatrick monthly since October 2010 as that information was contained in Dr. Sundaresan's July 31, 2012 RFC opinion, which the ALJ specifically analyzed. (Tr. 28; *see* Tr. 854-60.) In addition, the ALJ, in her decision, specifically discussed the examination notes of various times Dr. Sundaresan had treated Kirkpatrick. (Tr. 28-29.) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, as set forth above, noted that portions of Dr. Sundaresan's opinions in the RFC determination were not consistent with the other evidence in the record, including Dr. Sundaresan's own treatment and examination notes. (Tr. 28-29; *see* 20 C.F.R. §§ 404.1527(c)(3), (4), (6). As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Once again, the ALJ was, at the very least, implicitly aware that Dr. Sundaresan was a neurosurgeon as this information was included in Dr. Sundaresan's RFC determination, which the ALJ specifically analyzed. (Tr. 28; *see* Tr. 860.) Because the ALJ properly considered the opinions of Dr. Sundaresan, remand is not required.

In summary, the ALJ did properly consider, evaluate, and analyze the treatment records and opinions of Dr. Kirkpatrick. Because substantial evidence supports the ALJ's RFC determination, any alleged error relating to the failure of the ALJ to properly analyze Dr. Sundaresan's RFC opinions would be harmless error. *See Mays v. Bowen*, 837 F.2d 1362, 1364

16

(5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error). Consequently, remand is not required.

### 3.    Period Prior to December 31, 2010

In addition, the Court disagrees with Kirkpatrick's claims that the ALJ failed to consider the relevance of Dr. Sundaresan's opinions as to the period prior to December 31, 2010, where the ALJ found that, for purposes of his DIB application, there was no evidence that Kirkpatrick had a severe medically determinable impairment on or before December 31, 2010. (Pl.'s Br. at 11.)   Kirkpatrick claims that Dr. Sundaresan repeatedly opined that Kirkpatrick could not perform even sedentary work since at least 2009, prior to the date last insured, and the ALJ erred in not considering such retrospective medical diagnosis. (Pl.'s Br. at 11.)   In addition, Kirkpatrick argues that objective imaging studies and examinations prior to December 31, 2010, Kirkpatrick's date of last insured, supported Dr. Sundaresan's opinions that Kirkpatrick did have a severe impairment at that time. (Pl.'s Br. at 11-13.)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic

work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

As set forth above, Kirkpatrick argues that the ALJ erred in failing to find, based on Dr. Sundaresan's opinions and other objective medical evidence in the record, that Kirkpatrick suffered from severe impairments prior to December 31, 2010. As Kirkpatrick's Title II insured status expired on December 31, 2010, he must establish that he became disabled on or before that date to be eligible for benefits. *See Barraza v. Barnhart,* 61 F. App'x 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (citing *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990)). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *Barraza*, 2003 WL 1098841, at *1 (citing *Torres v. Shalala,* 48 F.3d 887, 894 n. 12 (5th Cir. 1995)). Retrospective medical diagnosis may constitute relevant evidence of the onset of disability as long as corroborated by lay evidence relating back to the claimed period of disability or contemporaneous medical reports. *Brandstetter v. Astrue*, No. 6:11-CV-016-BL, 2012 WL 947028, at *5 (N.D. Tex. Mar.

18

5, 2012) (citing *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997)).  *King v. Barnhart*, 372 F. Supp. 2d 932, 938 (S.D. Tex. 2005).

In this case, the ALJ did not discuss the two retrospective opinions of Dr. Sundaresan that, in his best medical opinion, the earliest date that Kirkpatrick's symptoms and limitations applied was either 2009 (Tr. 860) or prior to 2009 (Tr. 1114).  The ALJ failed to do so even though there was corroborating lay testimony as well as contemporaneous medical reports, as pointed out by Kirkpatrick, indicating that Kirkpatrick may have suffered from some impairments prior to December 31, 2010.  However, any error by the ALJ appears to be harmless as Kirkpatrick has not presented any non-conclusory or non-speculative evidence showing how such impairments impacted his ability to work prior to December 31, 2010 or beyond those limitations already found by the ALJ in her RFC determination.  *See, e.g.*, *McDaniel v. Colvin*, No. 4:13-CV-989-O, 2015 WL 1169919, at *4-5 (N.D. Tex. Mar. 13, 2015); *Lewis v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ); *see also Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Martinez v. Astrue*, No. 4:10-CV-883-Y, 2011 WL 3930219, at *8 (N.D. Tex. Aug. 18, 2011) ("[T]he mere diagnosis of a mental impairment such as depression 'says nothing about the severity of the condition.'") (quoting *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008)).  In addition, such error is harmless as substantial evidence supports the ALJ's ultimate disability determination that Kirkpatrick was not disabled even after December 31, 2010, when his symptoms and impairments appeared

19

worse than prior to December 31, 2010.  In other words, even assuming the ALJ had found that

Kirkpatrick did suffer from severe neck, spine, knee and shoulder impairments prior to

December 31, 2010, and continued to consider his application for DIB, there is no evidence that

the result would have been any different than the ultimate decision by the ALJ that Kirkpatrick

was not disabled.

### B.      Credibility

In his brief, Kirkpatrick also argues that the ALJ failed to properly evaluate his

credibility. (Pl.'s Br. at 16-18.)  Specifically, Kirkpatrick states:

> Here, the ALJ's discussion of the evidence fails to mention either the
> required legal standards that must be used for assessing a claimant's credibility, a
> finding about whether Mr. Kirkpatrick's testimony was found credible or not at
> either step of the required legal standards, nor does she give any explanation for
> why Plaintiff's testimony was found credible or not.  (Tr. 26-29.)

> Mr. Kirkpatrick gave detailed testimony on his symptoms and resulting
> limitations, his limited activities of daily living, and his lack of significant or
> sustained response to treatment . . . .   The ALJ failed to compare Mr.
> Kirkpatrick's testimony on these subjects against the record and explain why his
> statements were found not credible as required by 20 C.F.R. §§ 404.1529,
> 416.929 and SSR 96-7p.  Therefore, the ALJ's entirely unexplained credibility
> determination for Mr. Kirkpatrick is not entitled to deference and should not be
> affirmed.  As the Fifth Circuit stated in *Abshire*, 848 F.2d at 642, the ALJ must
> weigh both the objective evidence and the other evidence in the record and
> articulate clear reasons for finding a claimant not credible.  That was not done
> here.  The ALJ failed to indicate what legal standards were followed and failed to
> even reach a conclusion about Mr. Kirkpatrick's testimony, let alone provide an
> analysis to support her credibility finding.

(Pl.'s Br. at 17-18.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is

a medically determinable impairment that could reasonably be expected to produce the

claimant's symptoms such as pain.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).  Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *2.  A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled.  42 U.S.C. § 423(d)(5)(A).  A claimant's testimony must be consistent with the objective medical evidence and other available evidence.  20 C.F.R. §§ 404.1529(a), 416.929(a).

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations.  SSR 95-5p, 1995 WL 670415, at *2 (S.S.A. Oct. 31, 1995).  Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir.1994).  Nevertheless, the ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements

and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *4. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *3.

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7P, 1996 WL 374186, at *4 (July 2, 1996). At the same time, as noted above, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays,* 837 F.2d at 1364. "Failing to articulate specific reasons for discounting a claimant's credibility obviously results in some error." *Henderson v. Comm'r of Soc. Sec. Admin.,* No. 12-00809-BAJ-RLB, 2014 WL 1239354, at *8 (M.D. La. Mar. 25, 2014). Nonetheless, that error is harmless where (1) the ALJ discusses the claimant's allegations and (2) substantial record evidence supports the credibility determination. *Id.*; *see, e.g., Haywood v. Sullivan,* 888 F.2d 1463, 1469–70 (5th Cir. 1989) (failure to explain credibility findings was

22

harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462–63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding).

In addition, "failure to employ the seven-factor analysis when assessing credibility of subjective complaints constitutes legal error." *Parker v. Barnhart*, 431 F. Supp. 2d 665, 671 (E.D. Tex. 2006). "Such an error warrants a reversal unless harmless error analysis indicates that 'remand would be an idle and useless formality.'" *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

While the ALJ's credibility analysis was brief and incomplete, it appears that any error was harmless. To begin with, both requirements of the credibility harmless error analysis are met here. First, albeit briefly, the ALJ discussed some of Plaintiff's subjective complaints of his limitations, symptoms, and pain during his medical examinations. (Tr. 26-28.) In addition, the ALJ stated, "The claimant's testimony concerning his level of pain and functional limitations was not credible or supported by the clinical medical evidence." (Tr. 30-31.) While it would have been preferable for the ALJ to go into more detail, it is clear that the ALJ was considering Kirkpatrick's testimony at the hearing regarding his ability to do daily activities and his level of pain. (*See* Tr. 56-64.) In addition, the ALJ summarized the objective medical evidence contained in the record. (Tr. 26-29.) The ALJ's claim to have considered claimant's testimony is

23

corroborated by her incorporation of Plaintiff's allegedly limited ability as a result of his neck, knee, shoulder, and wrist pain (*see* Tr. 56-61) into the RFC determination and into the hypotheticals posed to the VE (Tr. 32-33, 66-67, 70-71).   Specifically, the ALJ included limitations to account for Kirkpatrick's need to alternate between sitting and standing and need for limits on his standing and walking, overhead reaching, and bilateral handling.  (Tr. 26-31; *see* Tr. 56-64.)  As a result, the ALJ satisfied her obligation to consider Plaintiff's alleged symptoms. *See Herron v. Halter,* 250 F.3d 744, 2001 WL 274760, at *1 (5th Cir.2001) (lack of specific findings was harmless error where ALJ detailed claimant's testimony and evidence earlier in the decision and said testimony and evidence were considered in reaching a credibility decision). While the Court concedes that the ALJ should have articulated specific inconsistencies between the record and Plaintiff's allegations and gone through the credibility factors, any errors were harmless because substantial evidence supports the credibility and RFC findings.  As a result, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 14, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 31, 2016.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

25